FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 25, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESS RICHARD SMITH,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>KEITH GOODENOUGH,<br><br>　　　　　　Defendant. | No.　4:18-cv-05031-SMJ<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S MOTIONS AS MOOT** |

In this 42 U.S.C. § 1983 case, *pro se* Plaintiff Jess Richard Smith, a prisoner at the Washington State Penitentiary, sues Defendant Keith Goodenough, a mental healthcare provider in the prison's Intensive Management Unit, claiming Defendant retaliated against Plaintiff for engaging in activity protected by the First Amendment. Before the Court, without oral argument, is Defendant's motion for summary judgment, ECF No. 22, as well as Plaintiff's cross-motion for summary judgment, motion to stay proceedings, and motion for an award of expenses, ECF No. 29. Having reviewed the file and relevant legal authorities, the Court grants Defendant's summary judgment motion because the adverse action Plaintiff complains of reasonably advanced a legitimate correctional goal. Accordingly, the Court denies Plaintiff's motions as moot.

## BACKGROUND

At all times relevant to this case, Plaintiff resided in the prison's Intensive Management Unit. ECF No. 9 at 15. Plaintiff must maintain a "level four status" to be released to the general prison population. *Id.*; *see also* ECF No. 29 at 34.

Around 1:30 PM on March 17, 2017, Plaintiff spoke to his neighbor, inmate Frank Lee James Uhyrek, about not associating with another inmate, known only as Mr. Moseley, because he is supposedly a sex offender. ECF No. 9 at 16. Inmate Uhyrek agreed not to do so to avoid attacks from other inmates for talking to a sex offender. *Id.* Plaintiff claims he "was speaking on matters of public concern, . . . consist[ing] of the dangers of child molesters like Mr. Mosely, being in society, and just how it is a travesty of the criminal justice system, to sentence drug dealers, to more time, than inhuman child molesters." ECF No. 29 at 33.

Defendant issued Plaintiff a serious infraction alleging he, in concert with inmate Uhyrek, violated Washington Administrative Code rule 896 by harassing inmate Moseley.[1] ECF No. 9 at 31. Based on this infraction, the Intensive

---

[1] The infraction was unprecedented in Plaintiff's experience. He explains,

> criminal offender people, housed in every IMU, in the State of Washington, that I have been housed in during my 19 years incarceration, yell loudly outside of their cells, curse at eachother, across the prison halls, and exercise various forms of free speech, and do not get general infractions or serious infractions, for this protected activity of speech.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S MOTIONS AS MOOT - 2

Management Unit immediately demoted Plaintiff to level two. *Id.* at 29. Plaintiff received notice of the demotion around 3:00 PM on March 17, 2017. *Id.* at 16. Plaintiff did not receive a copy of the infraction until later. *Id.* In the infraction, Defendant alleged,

> I was called to another offenders cell on 3/17/17@1345 hours because [Plaintiff] was participating in harassing another offender on the tier. [Plaintiff] stated, "Yeah, I know Mr. Moseley is a fat fudge packer. He likes to rape little boys." he was responding to a comment made by offender Uhyrek . . . Mr. Uhyrek initially made the comment to Mr. Moseley . . . that he had googled Moseley's name and found out he is a sex offender. He asked Moseley if he liked little boys. [Plaintiff] is in violation of a WAC 896- Harassing, using abusive language, or engaging in other offensive behavior directed to or in the presence of another person(s) or group(s) based upon race, creed, color, age, sex, national origin, religion, sexual orientation, marital status, or status as a state registered domestic partner, disability, veteran's status, or genetic information

*Id.* at 31.

That same date, Plaintiff submitted an inmate grievance to the Washington State Department of Corrections. ECF No. 29 at 48. In it, Plaintiff claimed, "I did not harass any inmate but refused to talk to the inmate because he is a sex offender. I have a right to association and I exercised that right and some inmate was mad over that." *Id.*

On March 22, 2017, Defendant visited Plaintiff's cell while conducting mental health checkups, asked him if he was okay, and then said "[s]ee what

---

ECF No. 29 at 29.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S MOTIONS AS MOOT **-** 3

happens with grievances and lawsuits." ECF No. 9 at 17; ECF No. 29 at 28; *see also* ECF No. 9 at 33. Inmate Uhyrek overheard this encounter and interpreted Defendant's parting comment as a snide reference to Plaintiff's recent attempts to redress the retaliatory infraction. ECF No. 9 at 33.

That same date, Plaintiff submitted another inmate grievance to the Department of Corrections. *Id.* at 23. In it, Plaintiff wrote,

> I lost my level 3 & 4 based on an allegation of harassing another offender by way of 3rd party conversation. I'm being punished for my First Amendment right to freedom of speech by [the unit manager and Defendant]. The WAC 896 is no longer an infraction because it was found to be vague and violates others' freedom of speech.

*Id.*

On March 27, 2017, the Department of Corrections found Plaintiff not guilty of the infraction because, at the hearing, another inmate took responsibility for the harassing and abusive language uttered. *Id.* at 35.

On March 31, 2017, the correctional program manager denied Plaintiff's appeal of his level demotion, finding his "level was denied appropriately due to receiving an infraction for negative behavior." *Id.* at 24. The manager vowed to readdress Plaintiff's appeal if he were to be found not guilty of the infraction. *Id.*

On April 15, 2017, the Intensive Management Unit promoted Plaintiff back to level three. *Id.* at 37. But on May 2, 2017, the correctional program manager again denied Plaintiff's appeal of his level demotion, finding his "level was denied

appropriately due to exhibiting negative behavior." *Id.* at 25. Noting the infraction had been dismissed, the manager explained, "[h]owever, that was due to a technicality." *Id.* The manager maintained Plaintiff "w[as] displaying behavior that was contradictory to appropriate level progression." *Id.*

Plaintiff alleges Defendant "violated [his] First Amendment Rights . . . by punishing and retaliating against [him] for [his] exercise of Freedom of Speech, Access to the Court, and 14th Amendment Right to Association." *Id.* at 19–20. Specifically, Plaintiff alleges Defendant accomplished this constitutional violation "by filing false disciplinary reports that chilled [his] First Amendment Right to free speech." *Id.* at 20.

## LEGAL STANDARD

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of showing no reasonable trier of fact

could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the nonmoving party fails to make such a showing for any of the elements essential to its case as to which it would have the burden of proof at trial, the Court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

The Court may consider as evidence a *pro se* litigant's contentions offered in motions or pleadings, provided "such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and . . . [the litigant]

attest[s] under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *see also, e.g.*, *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (concluding a *pro se* prisoner's factual statement, which he swore was "true and correct," functioned as an affidavit); *Schroeder v. McDonald*, 55 F.3d 454, 460 & n.10 (9th Cir. 1995) (concluding a *pro se* prisoner's complaint functioned as an affidavit because he "stated under penalty of perjury that the contents were true and correct").[2]

## DISCUSSION

**The adverse action reasonably advanced a legitimate correctional goal.**

A viable First Amendment retaliation claim under § 1983 requires proof of the following five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)).

Here, Plaintiff alleges Defendant took adverse action against him "by filing false disciplinary reports," which prompted other state actors, who are not parties to

---

[2] Considering these legal authorities, the Court construes Plaintiff's complaint as an affidavit because, in it, he certifies under penalty of perjury that his allegations are true and correct to the best of his knowledge. ECF No. 9 at 21.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION
AND DENYING PLAINTIFF'S MOTIONS AS MOOT **- 7**

this case, to demote his level and suspend his privileges for two months. ECF No. 9 at 20; *see also id.* at 18; ECF No. 29 at 33–35. Plaintiff alleges Defendant took this adverse action against him generally "for [his] exercise of Freedom of Speech, Access to the Court, and . . . Right to Association." ECF No. 9 at 20.

Plaintiff "concedes there is a likelihood to not prevail on his retaliation claims, for the exercise of his right to access the court and file grievances." ECF No. 29 at 23. The Court accepts this concession because the record contains no evidence plausibly linking Defendant's adverse action to Plaintiff's exercise of the right to court access. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) ("To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'" (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989))). The sole piece of evidence that could conceivably establish this nexus is Defendant's alleged statement—"[s]ee what happens with grievances and lawsuits"—uttered outside Plaintiff's cell five days after the adverse action. But this is not the type of specific and significant probative evidence required to defeat summary judgment.

Overall, the record shows the reason for Defendant's adverse action was Plaintiff's oral repudiation of another inmate labeled as a sex offender, not his exercise of the right to court access. Recognizing this distinction, Plaintiff contends he will prevail on his remaining claim that Defendant retaliated against him by

punishing him for exercising his freedom of speech and right of association. ECF No. 29 at 22–23. The viability of Plaintiff's remaining claim hinges on whether Defendant's adverse action reasonably advanced a legitimate correctional goal.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). A prison regulation burdening a prisoner's constitutional right is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This test depends on the following four factors:

> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001).

"[T]he prisoner plaintiff 'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.'" *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)). The Court "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (quoting *Sandin*

*v. Conner*, 515 U.S. 472, 482 (1995)).

The Department of Corrections has promulgated a regulation providing,

> Any of the following types of behavior may constitute a serious violation. . . . 896 - Harassing, using abusive language, or engaging in other offensive behavior directed to or in the presence of another person(s) or group(s) based upon race, creed, color, age, sex, national origin, religion, sexual orientation, marital status or status as a state registered domestic partner, disability, veteran's status, or genetic information

Wash. Admin. Code § 137-25-030(1) (category C, level 1, rule 896).

Plaintiff claims this regulation has previously been declared unconstitutional. ECF No. 9 at 23. His assertion is incorrect. But it makes little difference because Plaintiff challenges Defendant's adverse action, not this regulation.

Plaintiff cites a Washington state appellate court opinion for the proposition that a "civil sanction may not be imposed on inmates based on statements made about public officials unless made with malice, threats to harm, etc." *Id.* at 21 (citing *Parmelee v. O'Neel*, 186 P.3d 1094, 1096, 1107 (Wash. Ct. App. 2008), *rev'd on other grounds*, 229 P.3d 723 (Wash. 2010)). That case does not help him because it concerned a letter about a prison official rather than oral confrontation with another inmate, and an infraction based on criminal libel rather than harassment. *See Parmelee*, 186 P.3d at 1096, 1105, 1107. In dicta, the court suggested that if the prison officials had issued the prisoner a general infraction "for '[a]busive language, harassment [sic] or other offensive behavior directed to or in the presence of staff,

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION
AND DENYING PLAINTIFF'S MOTIONS AS MOOT - 10

visitors, inmates, or other persons or groups,' then perhaps the regulation would be constitutionally sound under *Turner*[, 482 U.S. 78]." *Id.* at 1105 (first and second alterations in original) (quoting Wash. Admin. Code § 137-28-220(1) (rule 202)).

Plaintiff also quotes a Ninth Circuit opinion's holding that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance." *Bradley v. Hall*, 64 F.3d 1276, 1282 (9th Cir. 1995), *quoted in* ECF No. 29 at 9. That case also does not help him because it concluded the prison regulation at issue was facially valid but unconstitutional as applied to the facts presented there—facts involving a written grievance about a prison official rather than oral confrontation with another inmate, and an infraction based on disrespect rather than harassment. *Bradley*, 64 F.3d at 1278, 1281–82.

Plaintiff argues Defendant's adverse action "did not advance a 'legitimate' penological goal" because the infraction was dismissed, which "renders the infraction, as 'illegitimate.'" ECF No. 29 at 11. The Court disagrees because the undisputed facts reveal the infraction, by deterring harassment, advanced the legitimate penological goals of protecting prisoners' safety, security, and wellbeing, as well as preserving institutional order and discipline.

As a psychology associate, Defendant's duties include making rounds to check in with up to eighty-five prisoners in maximum custody units to determine their mental health condition, assess them for concerns, and intervene if necessary.

ECF No. 24 at 2. A significant part of Defendant's job is to protect prisoners from themselves and others. *Id.* at 3. Prisoners with preexisting mental health problems raise a special concern. *Id.*

Inmate Moseley has such mental health problems. *Id.* at 2. In the events leading to the infraction, inmate Moseley pressed the call button available for him to use when he is in distress. *Id.* Defendant responded to inmate Moseley's distress call. *Id.* As Defendant walked on the tier, he "could see [Plaintiff and inmate] Uhyrek at their cell front yelling at inmate M[oseley]." *Id.* When Defendant approached inmate Moseley's cell, "the acoustics in the mod were such that [he] could easily identify [Plaintiff and inmate] Uhyrek voices and clearly understood the contents of their conversations directed towards inmate M[oseley]." *Id.* "They were shouting. They did not stop even after [Defendant] entered the unit." *Id.*

When Defendant met inmate Moseley at his cell, "he was obviously in distress." *Id.* at 3. Defendant issued infractions to both Plaintiff and inmate Uhyrek "to protect inmate M[oseley]." *Id.*

True, Plaintiff was found not guilty of the infraction because, at the hearing, another inmate took responsibility for the harassing and abusive language uttered. ECF No. 9 at 35. But Plaintiff does not deny that, in fact, Defendant witnessed *Plaintiff* say, "Yeah, I know Mr. Moseley is a fat fudge packer. He likes to rape little boys." *Id.* at 31; *see also* ECF No. 24 at 2. Plaintiff presents no evidence to contradict

this portion of Defendant's declaration. Instead, Plaintiff admits "yelling that Mr. Mosely, is a child molester and barred from speaking to [Plaintiff]" and "speaking . . . on topics of dangerous pedophiles in society and the molesters' sentencing disparity." ECF No. 29 at 8.

Plaintiff argues the infraction was an ineffective means of protecting inmate Moseley because he "could not have been protected any more than being housed in the IMU, as Mosely and [Plaintiff], were at the time confined." *Id.* at 11–12. The Court disagrees because the concern was inmate Moseley's mental wellbeing, not solely his physical wellbeing. Moreover, harassing and abusive language like the type Plaintiff used would threaten prisoners' safety, security, and wellbeing, as well as institutional order and discipline, no matter where in the prison it is uttered.

Considering all, the Court concludes Defendant's adverse action was "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. It was "rationally related to a legitimate and neutral governmental objective." *Cook*, 238 F.3d at 1149. Some "alternative avenues that remain open to the inmates to exercise the right" might include an expression of displeasure with another inmate in a manner that refrains from harassing or verbally abusing the listener or, alternatively, perhaps communication in writing rather than oral confrontation. *Id.* The major "impact that accommodating the asserted right will have on . . . guards and prisoners" is a mounting threat to prisoners' safety, security, and wellbeing, as

well as institutional order and discipline. *Id.* Finally, no "easy and obvious alternatives indicate[] that the regulation is an exaggerated response by prison officials." *Id.*

Ultimately, Plaintiff has failed to "plead[] and prov[e] the absence of legitimate correctional goals for the conduct of which he complains.'" *Bruce*, 351 F.3d at 1289 (quoting *Pratt*, 65 F.3d at 806). Viewing the facts and drawing inferences in the manner most favorable to Plaintiff, no genuine dispute of material fact exists regarding the fifth element of his First Amendment retaliation claim under § 1983. Because Defendant's adverse action reasonably advanced a legitimate correctional goal, the Court need not address the remaining elements of a protected activity and a chilling effect. *See Brodheim*, 584 F.3d at 1269 n.3 ("On summary judgment, . . . the plaintiff must demonstrate there is a triable issue of material fact on *each element* of his claim . . . ." (emphasis added)). Therefore, Defendant is entitled to judgment as a matter of law. Considering this ruling, the Court does not reach Defendant's remaining arguments.

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Defendant's summary judgment motion, **ECF No. 22**, is **GRANTED**.

**2.** The Clerk's Office is directed to **ENTER JUDGMENT** for Defendant.

**3.** The Court certifies that an appeal of this Order could not be taken in

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION
AND DENYING PLAINTIFF'S MOTIONS AS MOOT **-** 14

good faith. *See* 18 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

**4.** All pending motions are **DENIED AS MOOT**.

**5.** All hearings and other deadlines are **STRICKEN**.

**6.** The Clerk's Office is directed to **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 25th day of February 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S MOTIONS AS MOOT **-** 15